# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

STEPHEN RAY HOKE,

            Plaintiff,

    v.

MR. LYLE; NATHAN DEAL; HOMER
BRYSON; STANLEY WILLIAMS; and
TIFFANY HENRY,

            Defendants.

CIVIL ACTION NO.: 6:16-cv-45

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Georgia State Prison in Reidsville, Georgia ("GSP"), submitted a Complaint, (doc. 1), pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, contesting certain conditions of his confinement. For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Governor Nathan Deal and Homer Bryson. Additionally, the Court should **DISMISS** Plaintiff's claims for monetary damages against Defendants in their official capacities, **DISMISS** his claims for compensatory and punitive damages under Section 1983, and **DISMISS** his monetary damages claims under RLUIPA. The Court should also **DENY** Plaintiff's request for a preliminary injunction. However, Plaintiff's allegations arguably state colorable claims for injunctive relief and nominal damages against Defendants Lyle, Williams, and Henry in their individual capacities. Accordingly, these claims will proceed, and the Court **DIRECTS** the United States Marshal to serve Defendants Lyle, Williams, and Henry with a copy of Plaintiff's Complaint and this Order.

# BACKGROUND[1]

Plaintiff claims that Defendants instituted policies specifically "stop[ping] all Christian Religious Mail from coming into the prison . . ." (Doc. 1, p. 8.) Plaintiff states that during the month of September 2014, Landmark Ministries tried on multiple occasions to send Plaintiff a study bible and bible study lessons. (Id. at p. 4.) Plaintiff alleges that he never received these packages and never received notification that Defendants rejected those items. When Plaintiff asked why he was not receiving his packages, a counselor told him that GSP had not approved his "Package Request" form. (Id.) Plaintiff contends that he submitted several package request forms and never received a response. After filing a grievance to that effect, Plaintiff alleges that Defendant Williams denied him administrative relief and described the mailing situation as normal prison procedure. (Id. at p. 5.) Plaintiff contends, instead, that this policy was specifically enacted to "isolate and inflict mental punishment on inmates," that the policy substantially burdens his ability to practice his religion because meetings and prayer services are also banned, and that Defendants are specifically targeting Christians because other religious followers have "full freedom to meet and practice any way they wish . . . includ[ing] unfretted [sic] mail delivery of any incoming . . . material." (Id. at pp. 7–10.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must

---

[1] The below recited facts are taken from Plaintiff's Complaint and are accepted as true, as they must be at this stage.

dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint such as the one Plaintiff has filed, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual

power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.     Failure to Disclose Litigation History

Plaintiff filed a Supplement to his Complaint on July 13, 2016, to correct an "honest mistake" regarding his litigation history. (Doc. 7.) In his Complaint, Plaintiff answered "no" when asked if he had previously "brought any lawsuits in federal court which deal with facts other than those involved in this action." (Doc. 1, p. 3.) In the follow-up questions asking Plaintiff for details regarding each lawsuit, he specifically wrote "N/A." However, in his Supplement, filed almost three months after his Complaint, Plaintiff discloses to the Court that in 2010 he brought one other suit in the Northern District of Georgia. (Doc. 7.)

The Court of Appeals for the Eleventh Circuit has consistently upheld the dismissal of cases where a *pro se* prisoner plaintiff has failed to disclose his previous lawsuits as required on

the face of the Section 1983 complaint form.  See, e.g., Redmon, 414 F. App'x 221, 226 (11th Cir. 2011) (*pro se* prisoner's nondisclosure of prior litigation in Section 1983 complaint amounted to abuse of judicial process resulting in sanction of dismissal); Shelton v. Rohrs, 406 F. App'x 340, 341 (11th Cir. 2010) (same); Young v. Sec'y Fla. for Dep't of Corr., 380 F. App'x 939, 941 (11th Cir. 2010) (same); Hood v. Tompkins, 197 F. App'x 818, 819 (11th Cir. 2006) (same).  Even where the prisoner has later provided an explanation for his lack of candor, the Court has generally rejected the proffered reason as unpersuasive.  See, e.g., Redmon, 414 F. App'x at 226 ("The district court did not abuse its discretion in concluding that Plaintiff's explanation for his failure to disclose the Colorado lawsuit—that he misunderstood the form— did not excuse the misrepresentation and that dismissal was a proper sanction."); Shelton, 406 F. App'x at 341 ("Even if [the plaintiff] did not have access to his materials, he would have known that he filed multiple previous lawsuits."); Young, 380 F. App'x at 941 (finding that not having documents concerning prior litigation and not being able to pay for copies of same did not absolve prisoner plaintiff "of the requirement of disclosing, at a minimum, all of the information that was known to him"); Hood, 197 F. App'x at 819 ("The objections were considered, but the district court was correct to conclude that to allow [the plaintiff] to then acknowledge what he should have disclosed earlier would serve to overlook his abuse of the judicial process.").

Another district court in this Circuit explained the importance of this information as follows:

> [t]he inquiry concerning a prisoner's prior lawsuits is not a matter of idle curiosity, nor is it an effort to raise meaningless obstacles to a prisoner's access to the courts.  Rather, the existence of prior litigation initiated by a prisoner is required in order for the Court to apply 28 U.S.C. § 1915(g) (the "three strikes rule" applicable to prisoners proceeding *in forma pauperis*).  Additionally, it has been the Court's experience that a significant number of prisoner filings raise claims or issues that have already been decided adversely to the prisoner in prior litigation. . . . Identification of prior litigation frequently enables the Court to

dispose of successive cases without further expenditure of finite judicial resources.

Brown v. Saintavil, No. 2:14-CV-599-FTM-29, 2014 WL 5780180, at *3 (M.D. Fla. Nov. 5, 2014) (emphasis omitted).

The Court has no tolerance for lack of candor in parties coming before it. However, in light of the fact that Plaintiff's case is still in the earliest stages, his disclosure occurred before frivolity review, and he fully disclosed his one other lawsuit, this Court will, in an abundance of caution, proceed with frivolity review. Plaintiff should be aware though that such behavior is typically subject to the sanction of dismissal. Furthermore, should another such instance arise, the Court may dismiss Plaintiff's Complaint for abuse of judicial process.

## II.     Dismissal of Claims Against Nathan Deal and Homer Bryson

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

Plaintiff tries to overcome the supervisory liability bar for his claims against Homer Bryson and Nathan Deal through the conclusory allegation that Defendants "are responsible parties for the instituting of the 'Censorship' policy, designed to stop all Christian Religious Mail from coming into the prison." (Doc. 1, p. 8.) (emphasis in original). However, he provides no further facts supporting the inference that Nathan Deal and Homer Bryson's liability stems from anything other than their supervisory positions. Furthermore, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), "accords judges . . . the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 327). Examples of "clearly baseless" claims are those "'describing fantastic or delusional scenarios.'" Id. Plaintiff fails to assert any facts supporting a plausible inference that Nathan Deal and Homer Bryson enacted a state-wide prison policy specifically banning all Christian religious mail from prisons. Accordingly, the Court should **DISMISS** Plaintiff's claims against Nathan Deal and Homer Bryson in their entirety.

III. **Dismissal of Claims for Monetary Damages against Defendants in their Official Capacities**

Plaintiff cannot sustain his claims for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees

of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Consequently, the Court should **DISMISS** Plaintiff's claims for monetary damages against Defendants in their official capacities.

## IV.     Dismissal of Claims for Compensatory and Punitive Damages

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier, 314 F.3d at 531 (citing Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury." Id. (internal citations omitted) (alterations in original). Consequently, a prisoner who has not suffered any physical injury cannot recover compensatory or punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s

physical injury requirement."); <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA.") *abrogated on other grounds by* <u>Sossamon v. Texas</u>, 563 U.S. 277 (2011). "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1312–13 (11th Cir. 2002).

However, the Eleventh Circuit has stated that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." <u>Williams</u>, 347 F. App'x at 436 (quoting <u>Hughes v. Lott</u>, 350 F.3d 1157, 1162 (11th Cir. 2003)). "Thus, a prayer for nominal damages is not precluded by § 1997e(e)." <u>Id.</u> (quoting <u>Smith</u>, 502 F.3d at 1271).

In this case, Plaintiff has not alleged that he suffered any physical injury due to Defendants' purported constitutional violations. Accordingly, the Court should **DISMISS** Plaintiff's claims for compensatory and punitive damages pursuant to 42 U.S.C. § 1997e(e). However, Plaintiff's requests for nominal damages may proceed.

## V.    RLUIPA Claims

Though Plaintiff does not cite the RLUIPA directly, construing his factual allegations liberally, he invokes that statute. <u>See</u> <u>Jones v. St. Lawrence</u>, No. CV410-066, 2010 WL 2772440, at *2 (S.D. Ga. July 13, 2010) ("While [the plaintiff] has styled this as a 42 U.S.C. § 1983 claim, this case actually arises under both § 1983 and the Religious Land Use and Institutionalized Persons Act . . . ."). The RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of

[Title 42], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-

> (1) is in furtherance of a compelling government interest; and

> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). A plaintiff bears "the initial burden of proving" a policy or action "implicates his religious exercise." Holt v. Hobbs, ___ U.S. ___, 135 S. Ct. 853, 862 (Jan. 20, 2015). The RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]" 42 U.S.C. § 2000cc–5(7)(A). A plaintiff also has the burden of establishing the policy or action "substantially burden[s an] exercise of religion." Holt, ___ U.S. at ___, 135 S. Ct. at 862.

Several courts have held that a defendant must have personally participated in an RLUIPA violation in order to be subject to suit under the Act and that supervisory or vicarious liability is not available. See, e.g., Pilgrim v. Artus, No. 9:07-CV-1001 GLSRFT, 2010 WL 3724883, at *14 (N.D.N.Y. Mar. 18, 2010) report and recommendation adopted, No. 9:07-CV-1001 GLSGHL, 2010 WL 3724881 (N.D.N.Y. Sept. 17, 2010) ("Neither the Supreme Court nor the Second Circuit have directly addressed the issue of whether personal involvement is a prerequisite for any valid RLUIPA claim, as it is under § 1983. However, district courts in this Circuit and elsewhere have held that personal involvement is a necessary component of valid RLUIPA claims."); Greenberg v. Hill, No. CIV.A. 2:07-CV-1076, 2009 WL 890521, at *3 (S.D. Ohio Mar. 31, 2009) ("In order to establish liability under RLUIPA (and Section 1983), a plaintiff must prove, among other things, the personal involvement of each defendant in the alleged violation."). Moreover, denial of a grievance alone does not appear sufficient to impose liability under the RLUIPA. Lowery v. Edmondson, 528 F. App'x 789, 792 (10th Cir. 2013)

("[Plaintiff] insufficiently pleads personal involvement. First, he identifies no actions on the part of [defendants] that infringed upon his rights. Second, we have previously held that the mere denial of a grievance, which [defendant] allegedly did, is inadequate for personal participation.").

However, in this case, Plaintiff alleges that Defendants Lyle, Williams, and Henry specifically enacted policies at GSP to prevent Christians from receiving any religious mail. See Wilkinson v. Secy, Florida Dep't of Corr., 622 F. App'x 805, 812 (11th Cir. 2015) ("[Plaintiff's] claims were based not on respondeat superior, but instead on an FDOC policy or custom that allegedly substantially burdened [Plaintiff's] religious exercise. And the claims were advanced not under § 1983 but under RLUIPA. Put differently, [Plaintiff's] claims were predicated on a theory of direct liability rather than of vicarious liability, and were formulated under RLUIPA rather than § 1983. For these reasons, the claims are cognizable, and the district court erred in ruling otherwise."). Thus, at this stage, where the Court construes Plaintiff's Complaint liberally and only dismisses those claims that are not plausible, the Court will not dismiss Plaintiff's RLUIPA claim against Defendants Lyle, Williams, and Henry.

However, Plaintiff is limited to seeking injunctive relief under the RLUIPA. While the RLUIPA creates "a private cause of action for a prison inmate if section 3 is violated, and further provides that the complaining party, if successful, may 'obtain appropriate relief against a government,'" including monetary relief, a prisoner is still subject to the terms of the PLRA, as explained above. Smith, 502 F.3d at 1269 (quoting 42 U.S.C. § 2000cc–2(a)), and *abrogated on other grounds by* Sossamon, 563 U.S. 277 (2011). Moreover, the Eleventh Circuit has held that Section 3 of the RLUIPA (42 U.S.C. § 2000cc-1) "cannot be construed as creating a private action against individual defendants for monetary damages." Smith, 502 F.3d at 1275.

For these reasons, the Court should also **DISMISS** Plaintiff's monetary damages claims under the RLUIPA. However, Plaintiff's request for injunctive relief under the RLUIPA against Defendants Lyle, Williams, and Henry survives frivolity review.

## VI.   Free Exercise Claims

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "To establish a violation of his right to free exercise," a plaintiff "must first establish that a state actor imposed a "substantial burden" on his practice of religion." Wilkinson v. GEO Grp., Inc., 617 F. App'x 915, 917 (11th Cir. 2015) (citing Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1549 (11th Cir. 1993)). To prove that his religious exercise was substantially burdened, a plaintiff "must present evidence that he was coerced to perform conduct that his religion forbids or prevented from performing conduct that his religion requires." Id. The defendants can then support their conduct on the ground that they applied a "neutral law of general applicability[.]" Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990).

Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause. However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir.2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, (1987)). "In the prison context, the state actor can defend the action if it is 'reasonably related to legitimate penological interests.'" Wilkinson, 617 F. App'x at 917 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Put succinctly, "[i]n a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials

administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of his religion or restricts his free exercise of a sincerely held religious belief." Hosey-Bey v. Williams, No. 2:12-CV-959-WHA, 2015 WL 4988388, at *6 (M.D. Ala. Aug. 19, 2015).

Plaintiff's allegations that Defendants Lyle, Williams, and Henry refused to provide him with a study bible and his bible study lessons sets forth plausible free exercise claims. Accordingly, Plaintiff's free exercise claim brought pursuant to Section 1983 for injunctive relief and nominal damages shall proceed.

**VII.    Equal Protection Claims**

Plaintiff's claims also implicate the equal protection clause of the Fourteenth Amendment.  To state a valid Equal Protection claim, a prisoner must show: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as religion.  Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (per curiam).  Additionally, a prisoner must demonstrate that the defendants were motivated by a discriminatory intent or purpose.  See Parks v. City of Warner Robins, 43 F.3d 609, 616 (11th Cir. 1995) (requiring "proof of discriminatory intent or purpose" to show an Equal Protection Clause violation); Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) (requiring a plaintiff to demonstrate that the challenged action was motivated by an intent to discriminate in order to establish an equal protection violation).  Potential indicators of discriminatory intent include "a clear pattern of disparate impact, unexplainable on grounds other than [religion]; the historical background of the challenged decision or the specific events leading up to the decision; procedural or substantive

13

departures from the norm; and the legislative or administrative history of the challenged statute." Parks, 43 F.3d at 617 (citation omitted).

Here, Plaintiff has stated sufficient facts to establish a plausible claim that Defendants Lyle, Williams, and Henry intentionally discriminated against him on the basis of religion. Plaintiff states that these Defendants allow inmates of other religions, including Muslim inmates, to receive religious materials, but refuse to allow the same for Plaintiff. (Doc. 1, pp. 7, 9–10.) See St. Lawrence, 2010 WL 2772440, at *2 ("[Plaintiff] alleges that Muslims have been treated differently from Christian and Jewish inmates . . . . That is all that is required to survive § 1915A screening here."). Plaintiff also contends that other religious groups are allowed to hold meetings and lead prayer services, but Christians are denied the same "freedom of worship." (Doc. 1, p. 7.) Accordingly, Plaintiff alleges facts sufficient to show intentional disparate treatment on the basis of his religion and, as a result, these claims may proceed.

## VIII. Plaintiff's Mail Claims

Plaintiff claims Defendants violated his rights when they sent back his mail without notifying him. "In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996). A federal prisoner does not surrender his constitutional rights at the prison gates. Bell v. Wolfish, 441 U.S. 520, 545 (1979); Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977). "Inmates clearly retain protections afforded by the First Amendment." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). These retained First Amendment rights include the right to send and receive mail. Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987). "'Conversely, prison officials have a duty to maintain security

within the prison, and this may include reading inmates' incoming and outgoing mail, with the exception of legal mail.'" <u>Stovall v. Duncan</u>, No. CV413-025, 2014 WL 1818152, at *3 (S.D. Ga. May 7, 2014), *report and recommendation adopted*, No. CV413-025, 2014 WL 3110030 (S.D. Ga. July 7, 2014) (quoting <u>Cotner v. Knight</u>, 61 F.3d 915, ___ (10th Cir. 1995)).

At the frivolity review stage, it cannot be determined whether Defendants had a legitimate penological purpose in returning Plaintiff's religious mail. Thus, Plaintiff's mail claims against Lyle, Williams, and Henry survives frivolity review.

## IX.     Plaintiff's Request for Preliminary Injunctive Relief

Plaintiff seeks an "immediate injunction" from the Court to order Defendants to "<u>stop</u> the Religious Mail Ban policies in <u>all</u> Georgia Prisons." (Doc. 1, p. 11) (emphasis in original). To be entitled to a preliminary injunction or a temporary restraining order, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. <u>Schiavo ex rel. Schindler v. Schiavo</u>, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." <u>Horton v. City of Augustine</u>, 272 F.3d 1318, 1326 (11th Cir. 2001).

If a plaintiff succeeds in making such a showing, then "the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation." <u>Newman v. Ala.</u>, 683 F.2d 1312, 1319 (11th Cir. 1982). Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with

prison administration and discipline, unless there is a clear abuse of discretion.  See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989).  In such cases, "[d]eference to prison authorities is especially appropriate."  Newman, 683 F.2d at 1320–21 (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available).

Plaintiff has not shown that he has satisfied the prerequisites in order to be entitled to a preliminary injunction.  Specifically, Plaintiff has not shown the likelihood of success on the merits of his claims.  This is not to say that Plaintiff will not be able to ultimately obtain some form of injunctive relief in this case.  However, he has not made the requisite showing at this time to obtain the extraordinary relief he currently seeks.  Therefore, the Court should **DENY** his request for a preliminary injunction.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Governor Nathan Deal and Homer Bryson in their entirety.  The Court should also **DISMISS** Plaintiff's claims for monetary damages against Defendants in their official capacities, **DISMISS** his claims for compensatory and punitive damages under Section 1983, and **DISMISS** his monetary damages claims under RLUIPA.  The Court should also **DENY** Plaintiff's request for a preliminary injunction.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations arguably state colorable claims for injunctive relief under Section 1983 and the RLUIPA against Defendants Lyle, Williams, and Henry. Plaintiff also states colorable claims for nominal damages under Section 1983 against Defendants Lyle, Williams, and Henry in their individual capacities. Consequently, a copy of Plaintiff's Complaint (doc. 1),

Supplement to Complaint (doc. 7), and a copy of this Order shall be served upon these Defendants by the United States Marshal without prepayment of cost.

The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

### INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis,* the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed within that discovery period.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff

will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## **INSTRUCTIONS TO PLAINTIFF**

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the

Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. <u>See</u> Fed. R. Civ. P. 33. Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact

set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of August, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA