**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

STEPHEN RAY HOKE,

    Plaintiff,

v.

MR. LYLE; STANLEY WILLIAMS; and
TIFFANY HENRY,

    Defendants.

CIVIL ACTION NO.: 6:16-cv-45

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Georgia State Prison ("GSP") in Reidsville, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, contesting certain conditions of his confinement. After the requisite frivolity review, Plaintiff's Complaint was served on Defendants Lyle, Williams, and Henry. (Doc. 8.) Defendants then filed a Motion to Dismiss based on Plaintiff's failure to exhaust his available administrative remedies and for failure to state a claim. (Doc. 16.) Plaintiff filed a Response, and Defendants filed a Reply. (Docs. 21, 24.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS** Plaintiff's Complaint, and **DENY** Plaintiff leave to appeal *in forma pauperis*. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case.

## BACKGROUND

Plaintiff's pleading centers on an alleged policy that Defendants instituted specifically to "stop all Christian Religious Mail from coming into the prison[.]" (Doc. 1, p. 8.) Plaintiff states

that, during the month of September 2014, Landmark Ministries attempted to send Plaintiff a study bible and bible study lessons. (Id. at p. 4.) Plaintiff alleges he never received these packages and never received notification that Defendants rejected them. When Plaintiff asked for an explanation, a counselor told him that he had not filed a package request form. (Id.) However, Plaintiff contends that, even after he submitted several package request forms, he never received a response from prison personnel. After filing a grievance stating that he never received his packages, Plaintiff alleges Defendant Williams denied him administrative relief and described the mailing situation as normal prison procedure. (Id. at p. 5.) Plaintiff contends, instead, that this policy was specifically enacted to "isolate and inflict mental punishment on inmates." (Id.) Furthermore, he alleges that the policy substantially burdens his ability to practice his religion because meetings and prayer services are also banned and that Defendants are specifically targeting Christians because other religious followers have "full freedom to meet and practice any way they wish . . . includ[ing] unfretted [sic] mail delivery of any incoming . . . material." (Id. at pp. 7–10.)

Plaintiff's only remaining claims after frivolity review were his RLUIPA claims for injunctive relief and his Section 1983 claims for injunctive relief and nominal damages under the Fourteenth Amendment and First Amendment. (Doc. 8.) Defendants filed a Motion to Dismiss on October 5, 2016, arguing that Plaintiff failed to exhaust his available administrative remedies before bringing this action and failed to state a claim upon which relief can be granted. (Doc. 16.) Defendants support their Motion with a Brief, several exhibits, and a Reply Brief. (Id; Doc. 24.) Plaintiff filed a Response along with several exhibits. (Doc. 21.)

**STANDARD OF REVIEW**

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

**DISCUSSION**

**I. Dismissal for Plaintiff's Failure to Exhaust GSP's Available Administrative Remedies Before Filing Suit**

**A. Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion

of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit Court of Appeals set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding

4

exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### B. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA [(Prison Litigation Reform Act)], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). The purpose of

6

Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

### C. The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. 16-2.) This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance. (Id. at p. 13.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." (Id. at p. 14.) Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender. (Id. at p. 13.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 13 (emphasis in original).) A "calendar day" is "a 24 hour time period from midnight to midnight Monday through Sunday." (Id. at p. 11.) The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any counselor. (Id. at pp. 16–17.) The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator. (Id. at p. 17.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. (Id.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at pp. 18–19.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 20.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) These time limits may be waived for good cause. (Id.)

### D.     Assessment of Plaintiff's Exhaustion

#### 1.     Plaintiff's Grievances

Plaintiff filed ten grievances while incarcerated at GSP. (Doc. 16-2, p. 35.) Defendants aver, and Plaintiff does not contest, that the only grievance he filed related to the current claims was a series of mail/package claims beginning on December 8, 2014.[1] The grievance form directed Plaintiff to "include specific information concerning your grievance to include dates, names of persons involved, and witnesses." (Id. at p. 42.) In response, Plaintiff provided the following description of the incident:

> I have been studying the Bible through the course given Prisoners by the Landmark Bible Institute. Sometime during the last month, this prisons mail [sic] room sent back my study book for my next lesson without first notifying me,

---

[1] The Court notes that there appears to have been an earlier grievance regarding the prison's mail/package policy filed on October 7, 2014. (Doc. 16-2, p. 35.) However, Defendants provide an affidavit stating that "GSP has no record of inmate Hoke filing any additional grievances concerning the rejection of books or his ability to meet with other Christian inmates and lead prayer services." (Id. at p. 8.) Plaintiff does not contest this, and therefore, the Court will take this to mean that the earlier grievance is unrelated to Plaintiff's current claims.

8

> which is a violation of Federal Law. This Religious Mail is protected, and must be allowed sent to me via Regular Mail, or me called up to [sic] either get permission to have it, or direct whose it is to be sent per S.O.P., no exceptions when dealing with Religious Mail.

(Id.) In the section labeled "Resolution Requested," Plaintiff requested that his book be given to him as soon as it arrives. (Id.) Plaintiff's grievance was appropriately appealed and fully exhausted. There is no record of any other grievances relevant to the current case, and Plaintiff makes no allegations that the grievance procedure was unavailable to him.[2]

### 2. Adequacy of Plaintiff's Grievance

Defendants largely base their argument that Plaintiff's grievance is insufficient on two grounds. First, Plaintiff does not specifically exhaust his claims as to the above-named Defendants, and second, he does not include the facts underlying his equal protection, RLUIPA, and free exercise claims in his fully exhausted grievance.

As to Defendants' first basis for finding lack of exhaustion, the Court reminds Defendants that the PLRA's exhaustion requirement does not require Plaintiff to "specifically name [Defendants] as the persons against whom the complaint was made" in his grievance. (Doc. 16-1, p. 10); See Bock, 549 U.S. at 219 ("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."); Parzyck v. Prison Heath Serv., 627 F.3d 1215, 1218 (11th Cir. 2010) ("A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim."); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("The question before us is whether the § 1997e(a) exhaustion requirement always prohibits a prisoner from suing any defendant other than those named in the administrative grievance the prisoner filed. We think it does not."); Toenninges v. Ga. Dep't of

---

[2] Plaintiff does aver that he filed grievances at other institutions regarding their policies impeding his ability to receive his mail. (Doc. 21, p. 4.) However, Plaintiff states that those issues were resolved and does not further contest the completeness of his grievance record while incarcerated at GSP.

9

Corr., 600 F. App'x 645, 649 (11th Cir. 2015) ("Exhaustion of the grievance procedure does not require that every single defendant be identified by name."). Accordingly, Plaintiff's grievance is sufficiently exhausted as to all the above-named Defendants.

However, it is clear from Plaintiff's grievance that he only exhausted his administrative remedies as to the prison mailing back his bible without notice. No other grievances are provided, and Plaintiff does not contest that he failed to exhaust his claims regarding meetings and prayer services being banned, and other religious followers receiving more freedom to practice. (Doc. 1, pp. 7–10.) Plaintiff also does not contest that he failed to file grievances about prison officials denying him access to a package request form, or that he submitted a package request form, and a package was still denied based on his religion.[3] Furthermore, Plaintiff makes no claims that the prison grievance procedure was unavailable to him. Therefore, Plaintiff's only fully exhausted claim is that he cannot receive his religious mail directly and must instead utilize the prison's package request form.

It is true that a prisoner need not "file a new grievance for each harmful incident in a string of related occurrences." Toenninges, 600 F. App'x at 649; see also Parzyck, 627 F.3d at 1218. However, that is not the situation in this case. Plaintiff's Complaint contemplates different facts than what were included in his grievance. His Complaint includes allegations that the prison bans Christian prayer services and meetings, and that the prison discriminates against Christians by either denying them package request forms or denying their packages even after a package request form is properly completed. None of these facts are present in his grievance— certainly not enough for the prison to "develop the necessary factual background upon which

---

[3] In his Response, Plaintiff attempts to argue that filling out a package request form is futile because another inmate, Samuel Stanhope Smith, filled out a package request form and did not receive his books. (Doc. 21-1, p. 4.) However, this does not excuse the fact that Plaintiff failed to properly exhaust under the prison's administrative remedies process.

10

decisions should be based" to resolve any issues. Alexander, 159 F.3d at 1327. Plaintiff's grievance only alerts prison personnel to the fact that Plaintiff did not receive his one package directly because he did not follow the prison's procedure of filling out a package request form.

Accordingly, the Court should **DISMISS** any claims arising out of Plaintiff's allegations that prison personnel: banned Christian religious meetings and services; violated equal protection by treating Christians differently; denied him access to package request forms; and denied him packages even after filling out a package request form because of his religion. However, the Court will still continue its analysis for Plaintiff's properly exhausted claims that the prison's mail policy—requiring a prisoner to complete a package request form before receiving packages—violated his rights under RLUIPA and the First Amendment. See Bock, 549 U.S. at 223–24 (an unexhausted claim in the complaint will not require dismissal of the entire complaint).

## II. Plaintiff's Claims Arising from Denial of Religious Mail

### A. RLUIPA

RLUIPA protects "any exercise of religion, whether. . . compelled by, or central to, a system of religious belief[.]" 42 U.S.C. § 2000cc-5(7)(A). Specifically, RLUIPA prohibits policies that substantially burden religious exercise except where a policy: "(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a). A plaintiff bears "the initial burden of proving" a policy or action "implicates his religious exercise" and "substantially burdened that exercise of religion." Holt v. Hobbs, ___ U.S. ___, 135 S. Ct. 853, 862 (Jan. 20, 2015). Once a plaintiff meets this burden, the burden then shifts to the defendant to show that the policy is the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000cc-2(b);

Smith v. Allen, 502 F.3d 1255, 1276 (11th Cir. 2007), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011). To constitute a substantial burden, "the government's action must be 'more than . . . incidental' and 'must place more than an inconvenience on religious exercise.' That is . . . the governmental action must significantly hamper one's religious practice." Allen, 502 F.3d at 1277 (citation omitted) (quoting Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004)). A policy that requires prisoners to "engage in conduct that seriously violates [their] religious beliefs" constitutes a substantial burden on religious exercise. Holt, 135 S. Ct. at 862.

Defendants argue that Plaintiff has not made sufficient factual allegations to show that requiring Plaintiff to fill out a package request form substantially burdens his practice of religion. (Doc. 16-1, p. 16.) Again, after analysis of Plaintiff's exhaustion detailed above, the only claim properly before the Court is based upon the facts that Plaintiff never submitted a package request form when his bible study materials were denied and that he wanted to receive his religious materials directly without the form. Under these facts, the prison's package policy does not constitute more than an "incidental" burden on Plaintiff's religious exercise. Plaintiff did not receive his materials because he simply did not fill out a package request form authorizing his receipt of those materials. Plaintiff would have received those materials if he had properly filled out a package request form. Plaintiff does not aver that filling out a package request form significantly hampers his religious practice; he merely states that it is "over-burdensome" to file a form with the mail room and send a copy to the ministry mailing the materials. (Doc. 21, p. 5.) This conclusory allegation is not sufficient. Rather, Plaintiff's allegations, even when construed in his favor, amount, to nothing more than "an inconvenience on religious exercise."

Accordingly, Plaintiff fails to state a claim under RLUIPA, and, therefore, the Court should **GRANT** Defendants' Motion and **DISMISS** Plaintiff's RLUIPA claims.

**B.     Free Exercise**

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause; however, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).

"To establish a violation of his right to free exercise," a plaintiff "must first establish that a state actor imposed a 'substantial burden' on his practice of religion." Wilkinson v. GEO Grp., Inc., 617 F. App'x 915, 917 (11th Cir. 2015) (citing Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1549 (11th Cir. 1993)). The defendant can then support his conduct on the ground that he applied a "neutral law of general applicability[.]" Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990).

Deference is given to prison officials, and, as a result, courts employ a "reasonableness" test to determine whether a regulation infringes on constitutional rights. Id. The Supreme Court has outlined four factors to be considered in determining the reasonableness of a regulation: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest;" (2) "whether alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources;" and (4) "whether there are ready alternatives to the regulation." Turner v. Safley,

482 U.S. 78, 89–91 (1987). The fourth factor asks whether "a prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." Overton v. Bazzetta, 539 U.S. 126, 136 (2003).

As stated earlier, Plaintiff has failed to state any facts supporting his allegations that the prison's policy of requiring a package request form constitutes a substantial burden on Plaintiff's religious exercise. Furthermore, even if Plaintiff were successful in making those allegations, Defendants have shown that the prison's package request policy is a "neutral law of general applicability." Plaintiff does not contest this argument either. He makes no allegations that only Christians are required to fill out a package request form or that any other religious groups are allowed to have their mail directly sent to them. Therefore, the Court should also **GRANT** Defendants' Motion and **DISMISS** Plaintiff's free exercise claims.

### C. First Amendment Mail Claims

Inmates have a First Amendment right to send and receive mail. Thornburg v. Abbot, 490 U.S. 401 (1989); see also Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008). However, this right must not be "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996). Conversely, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

Plaintiff contends that Defendants are interfering with his First Amendment right to receive mail because he was unable to obtain his bible study books and materials. However, Defendants argue that Plaintiff was unable to obtain his books because he did not follow the

prison's package request policy.  Furthermore, Defendants contend that the prison's policy is reasonably related to "the legitimate penological interest of preventing contraband from entering the prison through the prison mail system."  (Doc. 24, p. 10.)  Plaintiff does not deny that contraband may be smuggled in through the mail and that preventing such smuggling is a legitimate penological interest.  (Doc. 21, p. 3.)  Moreover, the Supreme Court has established that hardback books in particular "are especially serviceable for smuggling contraband into an institution."  Thornburg, 490 U.S. at 413; Bell v. Wolfish, 441 U.S. 520, 550–51 (1979). Because Plaintiff's First Amendment rights are limited by his status as a prisoner and the prison's mail policy is reasonably related to the legitimate penological objective of preventing contraband, the Court should also **GRANT** Defendants' Motion and **DISMISS** Plaintiff's mail claims arising under the First Amendment.

## III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[4]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]").  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous

---

[4] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action.  See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

15

claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss and Plaintiff's Response, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 16), **DISMISS** Plaintiff's Complaint for failure to exhaust his available administrative remedies and failure to state a claim, and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 19th day of January, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA