**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

STEPHEN RAY HOKE,

           Plaintiff,

    v.

MR. LYTE, et al.,[1]

          Defendants.

CIVIL ACTION NO.: 6:16-cv-45

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is currently before the Court on Plaintiff's Amended Complaint, doc. 48, and Defendants Lyte, Henry, and Williams's Motion to Dismiss, doc. 52. Plaintiff did not file a response in opposition, though the Court advised him of the consequences of failing to oppose the Motion and afforded him an additional opportunity to do so. Doc. 59. For the following reasons, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendants Lane, Dozier, Allen, and Pinero. I **RECOMMEND** the Court **DISMISS** Plaintiff's claims brought under Georgia law. Finally, I **RECOMMEND** the Court **GRANT** Defendants' Motion, doc. 52, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

## BACKGROUND

### I.  Procedural History

Plaintiff filed this action on April 21, 2016 while incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia. Doc. 1 at 1. Plaintiff's claims in his initial Complaint arose

---

[1]    The Court **DIRECTS** the Clerk of Court to amend the record and docket of this case to reflect "Defendant Lyle" is "Defendant Lyte."

from two sets of facts—he alleged that Defendants returned his packages containing religious materials as part of a statewide Christian ban and that Defendants banned Christian services and meetings at GSP.  Doc. 1; see Docs. 8, 27.  Plaintiff initially brought this action against five Defendants for alleged violations of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*., and under the First and Fourteenth Amendments.  Doc. 1 at 1.  On October 5, 2016, Defendants filed a Motion to Dismiss and argued, in pertinent part, that Plaintiff failed to exhaust his administrative remedies before filing suit in federal court.  Doc. 16, Doc. 16-1 at 4–12.  On January 19, 2017, the Magistrate Judge recommended the Court grant Defendants' Motion.  Doc. 27.  The Court adopted this recommendation over Plaintiff's objections.  Doc. 29.

On March 27, 2018, the Eleventh Circuit Court of Appeals vacated the dismissal of Plaintiff's suit and remanded this case back to this Court to provide Plaintiff with an opportunity to amend his Complaint.  Doc. 36.

## II.     Plaintiff's Amended Complaint

In accordance with the Eleventh Circuit's mandate, the Court granted Plaintiff the opportunity to amend his Complaint on May 7, 2018.  Doc. 40.  To facilitate that process, the Court provided Plaintiff an 11-point list of directives to follow when drafting his amended Complaint.  Id. at 2.  These directives included using the Court's standard form for pro se § 1983 litigants, providing only factual allegations and omitting all legal argument and conclusion, providing complete information on the administrative relief pursued, and adding "no more than ten pages to the form."  Id.  The Court cautioned Plaintiff that if he "fail[ed] to file an appropriately amended complaint, the Court will dismiss the cause for failure to prosecute and failure to follow a court Order."  Id. at 2–3.  Plaintiff requested an extension, which the Court

granted on June 8, 2018.  Docs. 41, 42.  Under the extension, Plaintiff had the opportunity to file

an Amended Complaint at any time up to and including June 29, 2018.  Doc. 42.  Plaintiff filed

his Amended Complaint on August 15, 2018.  Doc. 48.

### A.   Worship Services

In his Amended Complaint, Plaintiff adds more detail to his allegation that GSP officials

banned or restricted Christian meetings and services.[2]  Doc. 48.  Plaintiff argues the Christian

faith requires Christians, as a whole, to attend worship services on either Saturdays or Sundays.

Id. at 7–8.  First, due to the decree of Saint Constantine, every Sunday is a holy day for

Christians.  Id.  Second, some groups of Christians, such as Seventh Day Adventists, recognize

Saturday, not Sunday, as the Sabbath.[3]  Id.  Plaintiff asserts "Christians are to have worship

services on both days: Saturday and Sunday, and that these services shall include all Christians

being housed at [GSP]."  Id.  He contends that "there has been no Saturday or Sunday service" or

Easter or Christmas service "for over [three] years."  Id.  at 7–8, 12.  Plaintiff also notes that GSP

has a chapel which is "just sitting," and several church groups "requested to be allowed to finish

the [c]hapel repairs" but were refused.  Id. at 13.

Plaintiff also challenges a number of GSP policies or practices which he alleges make

worship services even more difficult to attend.  Id. at 13–14.  Defendants require anyone

attending a Christian religious service to sign up to attend the service in advance.  Id.  However,

the lists "are never 'posted,' and they don't get picked-up [sic] regularly."  Id.  Additionally, the

number of inmates who can attend worship services is capped at 75.  Id.  Once 75 inmates are in

---

[2]     Plaintiff first claimed that GSP officials banned or restricted Christian meetings and services in
his initial Complaint.  Doc. 1 at 7–10.

[3]     Plaintiff does not claim that he, himself, is a Seventh Day Adventist (rather, he refers to "our 7th
Day Adventist Brothers and Sisters") or a member of any specific Christian denomination which requires
Saturday worship.  Id. at 7–8.

attendance, no other inmates may attend.  Id.  Finally, GSP staff treats Christian services as a "privilege[]," and inmates who recently receive a disciplinary report cannot attend.  Id.

### B.    The Prison Mail Policy

In his Amended Complaint, Plaintiff writes that his religion requires him to study approved scriptures and to receive earthly instruction from God's chosen teachers.  Id. at 7–10.  Plaintiff receives his teachings and approved scriptures through outside religious groups who send him study bibles and devotionals at the prison.  Id. at 9–10.  Plaintiff alleges there is "an overburdensome statewide policy under which prison officials return packages containing religious materials without notice to the sender or recipient, preventing all Christians in Georgia prisons from accessing their religious teachers through the mail.  Id.  Plaintiff refers to this policy as the "Christian mail ban."  Id.

Specifically, Plaintiff alleges that sometime in September 2014, Landmark Ministries sent Plaintiff "a study bible and study lessons that were returned to the sender without notice to either [p]arty."  Id.  On October 28, 2014, Plaintiff wrote a letter to his counselor "asking why the materials were sent back."  Id.  Plaintiff writes that the unidentified counselor then "informed [him] that the book was returned because [he] failed to submit an approved package form to the mailroom prior to the package arriving in the mailroom."  Id.

Following that explanation, Plaintiff writes that he "then submitted multiple package request forms, with no response."  Id. at 9–11.  Plaintiff argues the rejected packages all came to GSP "from federally recognized prison ministries or federally recognized Christian organizations."  Id.  Plaintiff also alleges that "request[s] made for assistance" to Defendant Lyte "are futile" and that Defendant Lyte refuses to allow Christian inmates to have their religious mail "sent to his office for delivery . . . ."  Id.

**DISCUSSION**

**I.      Plaintiff's Amended Complaint**

Because the Eleventh Circuit found that "the district court abused its discretion by failing to grant [Plaintiff] leave to amend his complaint as a matter of course," the Court treats Plaintiff's Amended Complaint, doc. 48, as an amendment made pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure.  Doc. 36 at 4.

When Plaintiff filed his Amended Complaint, doc. 48, on August 15, 2018, his Amended Complaint became the operative pleading in this action.  Fritz v. Standard Sec. Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").  In his Amended Complaint, Plaintiff references some of his prior pleadings.  Doc. 48 at 10–12.  Schreane v. Middlebrooks, 522 F. App'x 845, 847 (11th Cir. 2013) ("[A]n amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." (quoting Varnes v. Local 91, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982))).  Accordingly, Plaintiff's Amended Complaint incorporates by reference two pages of his initial Complaint, doc. 1 at 4–5, the exhibits attached to Defendants' original motion to dismiss, doc. 16-2, and the exhibits he submitted in his response to that motion, doc. 21-1.[4]

The factual allegations asserted in Plaintiff's Amended Complaint and incorporated pleadings create two § 1983 claims for violations of Plaintiff's First and Fourteenth Amendment Rights and claims under RLUIPA.  Doc. 48.  All claims asserted in Plaintiff's Amended

---

[4]      In his Amended Complaint, Plaintiff refers to "Doc. 21-2 2."  Doc. 48 at 10.  Doc. 21-2 contains a copy of the envelope Plaintiff used to mail Doc. 21 to the Court.  Thus, the Court construes this reference liberally and finds Plaintiff intended to incorporate Doc. 21-1, which contains the exhibits he attached to his response to Defendants' first motion to dismiss.

Complaint, doc. 48, still arise from the same two sets of allegations—that Defendants have banned or unfairly restricted Christian meetings and worship services at GSP and that Defendants' implementation of the package policy at GSP creates a total, statewide ban on Christian mail.[5] Id. at 7–8.  In addition to Defendants Lyte, Williams, and Henry, who are already parties to this action, Plaintiff lists four new Defendants in his Amended Complaint: (1) Gregory Dozier; (2) Marty Allen; (3) Deputy Warden Pinero; and (4) Ms. Lane.  Doc. 48 at 2; see Docs. 1, 8.

Though Defendants filed a Motion to Dismiss, the Court will still perform its requisite frivolity review to ensure Plaintiff brings nonfrivolous claims.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).  However, one of Defendants' arguments is that the Court should dismiss Plaintiff's Amended Complaint because Plaintiff failed to follow this Court's instructions.  Doc. 52-1 at 8–9.  Because this argument goes to the sufficiency of the Amended Complaint, the Court will address it first.  The Court will then examine whether any parts of Plaintiff's Amended Complaint are frivolous and subject to sua sponte dismissal. Finally, the Court will examine the substantive arguments for dismissal contained in Defendants' Motion to Dismiss.

---

[5]     Plaintiff also requested the Court convert his claim into a class action on behalf of all prisoners at Georgia State Prison.  Id. at 17; Doc. 49.  The Court denied this request because the law clearly prohibits allowing pro se, incarcerated inmates to represent fellow prisoners in a class action.  Docs. 56, 58; Wallace v. Smith, 145 F. App'x 300, 302 (11th Cir. 2005) ("[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").  Plaintiff drafted his Amended Complaint to reflect his request for class certification.  Doc. 48.  For example, throughout his Amended Complaint, Plaintiff refers to actions taken by "the class" without identifying individual actors.  Id.  Because pro se complaints are to be construed liberally "so as to do justice," the Court considers the references to "the class" or "class members" to refer to Plaintiff, individually, and where actions are described as "taken by the class," the Court construes the allegations to mean actions taken by Plaintiff.  Torres v. Miami-Dade County, 734 F. App'x 688, 691 (11th Cir. 2018) (quoting Fed. R. Civ. P. 8(e)).

**A.    Defendants' Challenge to the Sufficiency of Plaintiff's Amended Complaint**

Defendants argue Plaintiff's Amended Complaint warrants dismissal because Plaintiff failed to timely file the Complaint by June 29, 2018, as required by this Court's Order.  Doc. 52-1 at 8–9  However, Plaintiff included a letter with his Amended Complaint which explained the reason for his untimely filing.  Doc. 48-1.  That letter stated that Plaintiff "made many attempts" to file his Amended Complaint, but the Complaint was first returned to him for missing postage.  Id.  On August 6, 2018, the post office returned the Amended Complaint again because Plaintiff sent the envelope to an incorrect address.  Id.  Plaintiff alleges he received that address from GSP law library staff and that GSP inmates do not have access to legal directories.  Id.  Plaintiff signed this letter on August 7, 2018, and it arrived at the Court in an envelope bearing an August 8, 2018 postmark.  Id.; Doc. 48-2.  The Court finds good cause exists to ignore the untimeliness of Plaintiff's filing.

As another example of Plaintiff's failure to comply, Defendants point out that the Court directed Plaintiff to "provide only factual allegations concerning events where the rights of Plaintiff himself were violated or Plaintiff himself was injured, including the date and location of each alleged violation," and to "clearly identify each defendant responsible for each alleged violation."  Doc. 52 at 8–9; see Doc. 40 at 2.  Defendants argue Plaintiff contravened this instruction by attempting to initiate a class action and referring to "the Class" or "we" throughout his Amended Complaint which obfuscates the party allegedly injured.  Doc. 52-1 at 8–9.  However, as discussed above, the Court addresses this by construing Plaintiff's Amended Complaint liberally and treating any mention of "the Class" as a reference to Plaintiff individually.

Finally, Defendants also argue Plaintiff's Amended Complaint should be dismissed because Plaintiff disregarded several of the Court's substantive directions.  Doc. 40 at 2; Doc. 52-1 at 8–9.  For example, though instructed to attach "no more than ten pages" to his Amended Complaint, Plaintiff attached around 14 pages and included references to his initial Complaint and other pleadings.  See Terrell v. Williams, No. 6:17-cv-104, 2019 WL 2462956, at *1 (S.D. Ga. May 9, 2019) (noting a plaintiff sidestepped the Court's directive to add no more than ten pages to the complaint form by simply referring to the attachments in his original complaint (alterations omitted) (quotations omitted)).

Although Plaintiff blatantly ignored several of the Court's instructions, the Court will not dismiss Plaintiff's Complaint for failure to follow the Court's Order at this time.  However, Plaintiff is warned that any additional failures to comply with the Court's instructions will not receive such leniency and may result in dismissal for failure to follow a Court Order.

**B.     Plaintiff's Asserted Claims**

Plaintiff asserts in his Amended Complaint federal claims for violations of his First and Fourteenth Amendment rights and his rights under RLUIPA.  Those claims will be addressed below along with Defendants' Motion to Dismiss.  In addition to these claims, Plaintiff claims Defendants acted in violation of state law and the Georgia Constitution.  Doc. 48 at 4, 9–10.  As to his state law claim, Plaintiff merely alleges Defendants "refuse[d] to comply with State Law." Doc. 48 at 10.  This brief reference is insufficient to assert a state law claim.  Moreover, even if Plaintiff alleged a cognizable state law claim, no federal claims will remain pending in this action if the Court adopts this Report and Recommendation, and, in that circumstance, the Court should decline to exercise supplemental jurisdiction over any state law claims.  See Hicks v. Moore, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005); Raney v. Allstate Ins. Co., 370 F.3d 1086,

1088–89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

Plaintiff also refers to violations of his rights under the Georgia constitution.  Doc. 48 at 4, 9–10.  To the extent that Plaintiff is attempting to bring a claim for a violation of his rights under the Georgia constitution, he may not do so.  "Georgia does not have an equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages against state officers in their individual capacities for certain unconstitutional acts."  Draper v. Reynolds, 629 S.E.2d 476, 478 (Ga. Ct. App. 2006) (citing Howard v. Miller, 476 S.E.2d 636 n.2 (Ga. Ct. App. 1996)); see also Dixon v. Georgia Dep't of Pub. Safety, 135 F. Supp. 3d 1362, 1372 (S.D. Ga. 2015).

To the extent Plaintiff does assert any claims under Georgia law, I **RECOMMEND** the Court **DISMISS** those claims.

### C.    Named Defendants

Now, in his Amended Complaint, Plaintiff names four new Defendants: (1) Greg Dozier; (2) Marty Allen; (3) Deputy Warden Pinero; and (4) Ms. Lane.[6]  Doc. 48 at 1–5.

#### 1.    Supervisory Liability

"[I]t is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior."  Nunnelee v. Morgan, 550 F. App'x 716, 718 (11th Cir. 2013) (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  "To state a claim

---

[6]      In his initial Complaint, Plaintiff named five Defendants.  Doc. 1.  This Court dismissed Plaintiff's claims against two of those individuals, former Defendants Nathan Deal and Homer Bryson. Docs. 8, 14.  The Court found Plaintiff alleged no personal involvement on behalf of Defendants Deal and Bryson and "fail[ed] to assert any facts supporting a plausible inference that Nathan Deal and Homer Bryson enacted a state-wide prison policy specifically banning all Christian religious mail from prisons." Doc. 8 at 6–7; Doc. 14.  Rather, this Court found Plaintiff's "conclusory allegation[s]" that Defendants Deal and Bryson were the parties "responsible for the institution of the '[c]ensorship' policy" insufficient to show supervisory liability necessary to maintain a § 1983 action against those Defendants.  Plaintiff asserts the same type of conclusory and insufficient allegations against Defendants Dozier, Allen, Pinero, and Lane.  Doc. 48.

against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." <u>Barr v. Gee</u>, 437 F. App'x 865, 875 (11th Cir. 2011).

In his Amended Complaint, Plaintiff writes that all Defendants "are acting both together and alone" to deny Plaintiff his right to practice the Christian religion. <u>Id.</u> at 6. Similar to Plaintiff's allegations against Defendants Deal and Bryson in his initial Complaint, Plaintiff's Amended Complaint contains only conclusory allegations that Defendants Dozier, Allen, Pinero, or Lane are responsible for the mail ban, support the mail ban, and refuse to discuss the mail ban. The Amended Complaint is void of any facts showing personal involvement in the alleged deprivations or any allegations which would support an inference that liability stems from anything other than their supervisory positions. Finally, though Plaintiff makes conclusory and superficial allegations of a statewide Christian mail ban, the only example of this mail ban is the September 2014 return of Plaintiff's study bible to Landmark Ministries. Doc. 48 at 10. Though he alleges unnamed prison staff members continued to reject packages containing religious items, he makes this allegation without providing any dates, times, or other supporting information. <u>Id.</u> at 10–11.

This is not enough to support Plaintiff's allegation that "all Christians trying to practice their Religion in Prison . . . in Georgia" are experiencing a statewide custom or policy where their mail is rejected and returned to the sender on the basis of their religious belief. <u>Id.</u> Plaintiff claims a statewide Christian mail ban exists but fails to provide any facts showing this policy is

applied statewide or even at GSP.  Similarly, he asserts Defendants falsified records but does not make any plausible factual allegations in support.  Id.  These types of allegations constitute the type of "fantastic or delusional scenario" where courts may "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

Therefore, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendants Dozier, Allen, and Pinero, and Lane.

### *2.*    *Failure to State a Claim*

A pro se prisoner's § 1983 complaint must contain enough facts to state a claim that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "Pursuant to § 1983, a plaintiff may pursue relief for possible violations of his constitutional rights only against the specific individuals who committed acts that allegedly violated those rights."  Fedd v. Holt, No. 1:16-CV-0713, 2016 WL 2991123, at *2 (N.D. Ga. May 4, 2016).  While pro se plaintiffs are "not required to adhere to technical niceties" in drafting their complaints, they are still "required to 'state with some minimal particularity how overt acts of the defendant caused a legal wrong.'"  Kershaw v. White, No. 5:18-cv-166, 2018 WL 3463275, at *4 (M.D. Ga. July 18, 2018) (quoting Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008)); Harwood v. Wynn, No. 5:10-CV-411, 2010 WL 5128714, at *2 (M.D. Ga. Nov. 9, 2010) ("[A] district court properly dismisses a defendant when a prisoner . . . fails to state any allegations that connect the defendant with any alleged constitutional violation.");  see also Fed. R. Civ. P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief");  Douglas v. Yates, 535

F.3d 1316, 1321 (11th Cir. 2008) ("[A] complaint will be held defective . . . if [it] fails to connect the defendant with the alleged wrong." (quotation omitted)).

Plaintiff does not allege any overt acts or personal involvement from Defendants Dozier, Allen, or Pinero.  Rather, he alleges Defendant Dozier "is responsible for the Religious Mail Ban and has the powers to change it."  Doc. 48 at 15.  He writes Allen "supports the Religious Mail and Weekend Service Bans for Christians" and "refused to discuss either policy in person or through the Mail."  Id.  Defendant Pinero "refuses to acknowledge there is a problem" and "falsifies [Georgia Department of Corrections] records to conceal the fact that Religious Mail and Weekend Services for Christians are banned at [GSP]."  Id.

Plaintiff identifies some conduct by Defendant Lane in his allegations but fails to show how Lane has committed any purported constitutional violation.  Plaintiff alleges Defendant Lane is the "current Prison Mailroom Supervisor who is still refusing to deliver Religious Material to Christians, while sending it back without notice to either party."  Id.  But Plaintiff does not claim Defendant Lane returned his package in September 2014, and he does not describe any other incidents where Defendant Lane took actions which caused the non-receipt of Plaintiff's religious mail.  Rather, the statement quoted above is the only allegation Plaintiff makes against Defendant Lane.  This allegation is insufficient to show state a claim for relief against Defendant Lane.

Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendants Dozier, Allen, Pinero, and Lane on this ground, as well.

## II.    Defendants' Motion to Dismiss

Defendants argue Plaintiff failed to exhaust his administrative remedies as to the claims asserted in his original Complaint.  Doc. 52 at 9–10; see Doc. 27 at 8–11.  Because Plaintiff

12

brings claims arising from the same facts in his Amended Complaint, Defendants state that the

"amended complaint is subject to dismissal . . . for the same reasons."  Doc. 52 at 9–10; see Doc.

27 at 8–11.

### A.    PLRA's Exhaustion Requirement

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must

properly exhaust all available administrative remedies—the prison's internal grievance

procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C.

§ 1997e(a); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974

(11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections

officials time and opportunity to address complaints internally before allowing the initiation of a

federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th

Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it

based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how

special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA

requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language

means a court may not excuse a failure to exhaust, even to take such circumstances into

account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the

PLRA and that unexhausted claims cannot be brought in court.").  "Failure to exhaust

administrative remedies is an affirmative defense, and inmates are not required to specially plead

or demonstrate exhaustion in their complaint."  Jones, 549 U.S. at 216.

Proper exhaustion requires strict compliance with the prison's administrative policies,

deadlines, and other critical procedural rules.  Woodford v. Ngo, 548 U.S. 81, 91 (2006).  "[A]n

inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (emphasis retained) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit." (emphasis retained) (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000))).

Importantly, an incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974. Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom, 223 F.3d at 1261 (noting that an inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies were available to the inmate and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

To properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))); see also Okpala v. Drew, 248 F. App'x 72, 73 (11th 2007) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and

appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The policies of the particular institution determine what is necessary to fully exhaust all administrative remedies.  Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., No. 17-14278, 2018 WL 3861351, at *1 (11th Cir. Aug. 14, 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison.").

**B.      The Georgia Department of Corrections' ("GDC") Administrative Remedies**

GSP utilizes the GDC's procedures for prisoner grievances.  Doc. 16-2 at 1–4, 10–24.  The GDC's "prison grievance procedures are set out in a standard operating procedure."  Whatley I, 802 F.3d at 1208.  Standard Operating Procedure ("SOP") IIB05-0001 contains the GDC's policy for general grievances.  Doc. 16-2 at 10–24; See Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP IIB05-0001.").

The grievance procedure outlined in SOP IIB05-0001 is a two-step process.  Doc. 16-2 at 16; Malcolm, 2018 WL 2108108, at *3; Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015).  To properly exhaust, incarcerated individuals must properly fulfill the requirements of both steps.  Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005).  First, inmates must file a grievance within 10 days of becoming aware of the facts from which the grievance arises.  Doc. 16-2 at 16; Whatley II, 898 F.3d at 1075; Clark v. Kilpatrick, No.

6:18-cv-68, 2019 WL 356807, at *3 (S.D. Ga. Jan. 29, 2019); Toole, 2015 WL 4529817, at *5. Once a grievance is accepted for processing, the warden has up to 40 days to review the grievance and determine whether to grant or deny it. Doc. 16-2 at 19; Toole, 2015 WL 4529817, at *5. If a grievance is denied or goes unanswered, the inmate is required to appeal the denial or non-response after the warden's time to answer expires. Doc. 16-2 at 20; Toole, 2015 WL 4529817, at *5 ("An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired."); Clark, 2019 WL 356807, at *3–4.

"The inmate has seven calendar days from the date he receives the response to the grievance to file a Central Office Appeal." Doc. 16-2 at 20; Wright v. Fish, No. 3:19-cv-003, 2019 WL 2721222, at *6 (S.D. Ga. May 14, 2019); Toole, 2015 WL 4529817, at *5. The grievance process is not complete until either: (1) the incarcerated individual receives the Central Office's response to his appeal; or (2) the time for the Central Office to respond to the appeal expires. Wright, 2019 WL 2721222, at *6; Holland v. Anderson, No. 5:16-cv-88, 2017 WL 3827475, at *3 (M.D. Ga. July 14, 2017) (dismissing for failure to exhaust when plaintiff filed his lawsuit before the Central Office responded to his appeal and before the Central Office's time to respond expired).

### C.   Standard Under Turner v. Burnside

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d 1007, 1080–82 (11th Cir. 2008). First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's

version of the facts as true." Id.; see also Bracero, 748 F. App'x at 202.  The first prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao v. Sims, 679 F. App'x 819, 824 (11th Cir. 2017).  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust."  Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016) ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust."  Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209).

**D.      Plaintiff's Failure to Exhaust**

Plaintiff filed this action on April 21, 2016.  Doc. 1.  In his initial Complaint, he alleged two sets of facts from which various claims arose—the first set of facts related to the denial of religious packages, and the second set of facts alleged denials of religious services, prayers, and meetings.  Defendants argued in their first motion to dismiss Plaintiff failed to exhaust his administrative remedies.  Doc. 16-1 at 9–12.  In the January 19, 2017 Report and Recommendation, the Magistrate Judge found Plaintiff filed only one grievance (Grievance

Number 186459) which related to the claims in this lawsuit.  Doc. 27 at 10–11.  After examining the facts alleged in that grievance, the Magistrate Judge found Plaintiff's "only fully exhausted claim is that he cannot receive his religious mail directly and must instead utilize the prison's package request form."  Id. at 10.  Thus, the Magistrate Judge recommended the Court dismiss for failure to exhaust "any claim arising out of Plaintiff's allegations that prison personnel: banned Christian religious meetings and services; violated equal protection by treating Christians differently; denied him access to package request forms; and denied him packages even after filling out a package request form . . . ."  Id.  However, Plaintiff's RLUIPA and First Amendment claims remained based on the prison's requirement that Plaintiff complete a package request form before receiving a package.

For purposes of exhaustion, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."  Terry, 491 F. App'x at 82–83; Harris, 216 F.3d at 981.  Thus, a plaintiff cannot cure the lack of exhaustion while his lawsuit is pending.  Terry, 491 F. App'x at 82–83 (finding the plaintiff "failed to exhaust his administrative remedies" when he "failed either to receive the . . . denial of his appeal or to wait the requisite [time period] before filing his section 1983 complaint"); Harris, 216 F.3d at 981; Womack v. Donald, No. 3:06-cv-59, 2006 WL 2598211, at *3 (S.D. Ga. Sept. 8, 2006) ("[T]he PLRA does not allow Plaintiff to exhaust administrative remedies while his case is pending."); Hatch v. Burke Cty. Jail, No. 1:06-cv-080, 2006 WL 2660162, at *2 n.3 (S.D. Ga. Sept. 14, 2006) (recommending dismissal without prejudice when plaintiff failed to exhaust before filing suit because "if plaintiff can [later] exhaust his administrative remedies . . . he may proceed in a new civil action").

In their Motion to Dismiss, Defendants argue Plaintiff's Amended Complaint remains subject to dismissal because Plaintiff cannot subsequently cure his initial failure to exhaust. Doc. 52-1 at 10–11.  Defendants still contend Plaintiff's grievance is insufficient because he does not include the facts underlying his equal protection, RLUIPA, and free exercise claims.  Id.; Doc. 16-1 at 9–12.  Plaintiff alleges he exhausted "all" his administrative remedies and submits copies of Grievance Numbers 261679 and 250033 (both of which were submitted after Plaintiff filed his original Complaint).  Doc. 48 at 19, 28, 30.

As factual disputes exist between the two parties, the Court is empowered to weigh the evidence and make factual determinations.  Turner, 541 F.3d at 1082.  Defendants produced a copy of Plaintiff's Grievance History with their first motion to dismiss.  Doc. 16-2 at 35–37. Plaintiff's Grievance History shows that Plaintiff filed ten grievances while incarcerated at GSP, and he filed eight of those before April 21, 2016.  Id.  Prison officials categorized two of these eight grievances as relating to the prison's mail and package policy—Grievance Number 182671, first submitted on October 7, 2014, and Grievance Number 186459, first submitted on December 8, 2014.  Doc. 16-2 at 35.

Plaintiff filed Grievance Number 186459, which related to his claims against the mail room package policy, on December 8, 2014.[7]  Id. at 37.  The grievance form directed Plaintiff to "include specific information concerning [the] grievance," including "dates, names of persons involved, and witnesses."  Id. at 42.  In response, Plaintiff wrote:

> I have been studying the Bible through the course given Prisoners by the Landmark Bible Institute.  Sometime during the last month, this prisons mail [sic] room sent back my study book for my next lesson without first notifying me, which is a violation of Federal Law.  This Religious Mail is protected, and must

---

[7]     In his Amended Complaint, Plaintiff writes that the "class filed Grievance #936584 on December 8, 2014."  Doc. 48 at 11.  Defendants contend Plaintiff intended Grievance Number 186459 (which was filed on December 8, 2014) but mistakenly wrote "936584," which is his prison number.  Doc. 52-1 at 10 & n.5.  The Court finds Plaintiff intended to write "Grievance Number 186459."  Id.

> be allowed sent to me via Regular Mail, or me called up to [sic] either get permission to have it, or direct whose it is to be sent per S.O.P., no exceptions when dealing with Religious Mail.

Id.  In the section labeled "Resolution Requested," Plaintiff requested that his book be given to him as soon as it arrives.  Id.  Plaintiff appropriately appealed the warden's rejection of his grievance, and the grievance was responded to by the Central Office, fully exhausting the grievance process.  Id. at 37–46.

Exhaustion does not require incarcerated persons "file a new grievance for each harmful incident in a string of related incidents." Toenninges v. Ga. Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015); see also Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).  However, the PLRA requires exhaustion "occur 'first in an agency setting [to] allow[] 'the agency [to] develop the necessary factual background upon which decisions should be based' and [to] giv[e] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)); see Woodford, 548 U.S. at 93 (noting exhaustion is intended to allow prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").  Accordingly, while there is no requirement all facts be alleged in a grievance, the prisoner must "include[e] enough specific information in his grievance to apprise prison officials of the issue so they 'have an opportunity to resolve' it." Slaughter v. Bryson, No. 5:15-cv-90, 2018 WL 1400976, at *9 (S.D. Ga. Mar. 20, 2018) (quoting Jones, 549 U.S. at 204).

It is clear from the text of Grievance Number 186459 that, before April 21, 2016 (the date Plaintiff initiated this suit), Plaintiff grieved—and exhausted his administrative remedies as to—the prison returning his package to the sender without notice.  Though Plaintiff does not argue it,

the Court also addresses Grievance Number 182671—which Plaintiff first submitted October 7, 2014 and which prison officials categorized as relating to "mail/packages."[8]  Doc. 16-2 at 35. The text of that grievance is not before the Court.  However, Defendants submit other evidence of record that suggests Plaintiff also failed to exhaust his administrative remedies regarding his claim that he could not obtain his packages even after submitting a package request form. Defendants also provided an affidavit from Jacquelyn Ayendi, GSP Chief Counselor and Grievance Coordinator, as further evidence that Plaintiff failed to exhaust his administrative remedies as to his religious services claims.  Id. at 1–9.  In her affidavit, she states that "[n]one of the grievances filed by [Plaintiff] during his time at GSP mention any disparate treatment of Christian mail versus any other religious mail . . . ."  Id. at 8.  Plaintiff offers no sworn statement of his own to rebut Ayendi's.

Having weighed the evidence and the credibility of both positions, the Court finds Defendants' evidence stronger and more credible.  Thus, Plaintiff failed to exhaust his claims arising from allegations that he was denied access to package request forms or that prison officials continued to deny Plaintiff religions packages even after Plaintiff filled out a package request form.

Additionally, Defendants successfully show Plaintiff failed to grieve facts related to his claims regarding GSP's provision of religious services.  Grievance Number 186459 does not contain anything in this regard.  Moreover, nothing in Plaintiff's Grievance History supports a conclusion that the other six grievances Plaintiff filed at GSP before April 21, 2016 related to Plaintiff's religious freedom claims.  Doc. 16-2 at 35–37.  The six other grievances were

---

[8]     Plaintiff incorporated the attachments contained in Doc. 16-2 by reference in his Amended Complaint.  Doc. 48 at 11.

categorized as: "laundry"; "missing/confiscated property"; "assignment/classification"; or

"conditions of confinement." Id. A review of grievances Plaintiff filed at other prisons

demonstrates that grievances related to religious conditions are filed under the category

"religion." Id. at 36. Ayendi, in her affidavit, writes that GSP has "no record of [Plaintiff] filing

any additional grievances concerning . . . his ability to meet with other Christian inmates and

lead prayer services." Id. at 1–2, 8. Plaintiff does not contest this; rather, in his Amended

Complaint, he attempts to show he exhausted these claims by pointing to efforts at exhaustion

that occurred later, after he initiated this action. Doc. 48 at 28, 30. Thus, Plaintiff did not

exhaust his claims regarding bans on attending religious services until after he brought them in

this lawsuit (if then), and, therefore, his additional claims cannot be pursued in this lawsuit.

In his Amended Complaint, Plaintiff attaches paperwork from two grievances—

Grievance Numbers 261679 and 25033. Id. at 28–30. Both of these grievances relate to his

claims regarding GSP's provision of religious services. Grievance Number 261679 discusses

Plaintiff's attempt to attend a KAIROS reunion service, and Grievance Number 250033 relates to

the lack of Protestant Christian worship services on Sundays. Doc. 48 at 28–31. Plaintiff filed

Grievance Number 261679 on March 6, 2018, and he submitted Grievance Number 25033 on

August 27, 2017. Id. at 28, 30.

Neither grievance can cure the fact that Plaintiff did not properly exhaust his allegations

that GSP restricted Christians, generally, and Plaintiff, specifically, from attending worship

services at the time he filed his Complaint. Notably, these facts do not constitute new claims

brought for the first time in the Amended Complaint. Romano v. Sec'y, DOC, No. 2:06-cv-375,

2011 WL 1790125, at *4 (M.D. Fla. May 10, 2011) (finding incarcerated individuals are "only

required . . . to fully and properly exhaust the new claims prior to the time he filed the amended

complaint that included the new claims").  Rather, they relate directly to the claim Plaintiff

brought in his initial Complaint: that he was "required to practice only what Defendants . . .

allowed," while "Defendants allow Islam followers full freedom to meet and practice any way

they wish . . . ."  Doc. 1 at 10–11; Doc. 8 at 2.  This Court considered whether Plaintiff exhausted

these claims in its January 19, 2017 Report and Recommendation and found he did not.  Doc. 27

at 10–11.  The Court has reconsidered these allegations, as originally alleged and as alleged in

Plaintiff's Amended Complaint, in this Report and Recommendation and reaches the same

conclusion.  Plaintiff cannot avoid the exhaustion requirement by slightly amending the factual

allegations that support otherwise unexhausted claims.

In conclusion, Plaintiff's only exhausted claim concerns GSP's alleged rejection of

packages containing religious materials discussed in Grievance Number 182671 based on the

lack of a valid package request form.  Plaintiff failed to exhaust his administrative remedies as to

his claim prison officials denied him package request forms and rejected his religious packages

despite having filed such a form.  Finally, Plaintiff's own evidence demonstrates that, at the time

he filed this action, he had not exhausted as to his claims regarding restrictions on religious

services.

I, therefore, **RECOMMEND** the Court **GRANT** the portion of Defendants' Motion to

Dismiss discussing Plaintiff's lack of exhaustion and **DISMISS without prejudice** Plaintiff's

claims arising from Plaintiff's allegations that prison personnel banned Christian religious

meetings and services, treated Christians differently than other religious groups in regard to mail

or religious services in violation of the Fourteenth Amendment, denied him access to package

request forms, denied him packages even after filling out a package request form, and violated

any constitutional provision by imposing caps or other restrictions on religious services.[9]

### E.      Plaintiff's Surviving Claims

#### 1.      *Plaintiff's RLUIPA Claim*

In his surviving RLUIPA claim, Plaintiff alleges that he needs to obtain spiritual

scriptures selected by his teachers in order to practice his religion and that his religious exercise

is substantially burdened by GSP's package policy.  Defendants argue Plaintiff has failed to state

a claim under RLUIPA.  Doc. 52-1 at 11.  RLUIPA creates "an express private cause of action"

when prison officials place "restrictions on the religious exercise of institutionalized persons."[10]

Sossamon v. Texas, 563 U.S. 277, 282 (2011); Haight v. Thompson, 763 F.3d 554, 558 (6th Cir.

2014) (RLUIPA "created a private cause of action that empowers inmates to obtain 'appropriate

relief' from those who violate the statute[.]" (quoting 42 U.S.C. § 2000cc-2(a))).  RLUIPA

protects "any exercise of religion, whether or not compelled by, or central to, a system of

religious belief[.]"  42 U.S.C. § 2000cc-5(7)(A).  Under RLUIPA, prisons cannot substantially

burden a prisoner's religious exercise, even if the burden results from a rule of general

applicability, unless "the government demonstrates that the burden 'is in furtherance of a

compelling governmental interest' and 'is the least restrictive means of furthering' that interest.

Sossamon, 563 U.S. at 281 (quoting § 2000cc-1(a)); Benning v. Georgia, 391 F.3d 1299, 1306

(11th Cir. 2004).  When a prison policy or practice substantially burdens an inmate's religious

---

[9]      If Plaintiff believes he has, through his subsequent efforts, properly exhausted these claims, he may bring them by filing a different action.

[10]     Congress passed RLUIPA after the Supreme Court found RFRA unconstitutional as applied to the states in City of Boerne v. Flores, 521 U.S. 507 (1997).  Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 695–96 (2014).  Because RLUIPA "imposes the same general test as RFRA but on a more limited category of governmental actions," RFRA case law is relevant in determining a RLUIPA claim. Id. at 695, 730 (referring to RLUIPA and RFRA as "sister statutes").

practice, RLUIPA requires the prison to demonstrate the policy or practice "serves a compelling interest, such as prison safety, and the challenged rule is the least restrictive means of serving that interest." Benning, 391 F.3d at 1312. The RLUIPA plaintiff bears "the initial burden of proving" a policy or action "implicates his religious exercise" and that the challenged policy or practice "substantially burdens" that exercise of religion. Holt v. Hobbs, 135 S. Ct. 853, 862 (2015).

Individuals "may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2. Though the phrase "appropriate relief" seems broad at first glance, plaintiffs cannot sustain a RLUIPA action for money damages against official or individual capacity defendants but may only bring claims for equitable relief. Sossamon, 563 U.S. at 277; Smith v. Allen, 502 F.3d 1255, 1255 (11th Cir. 2007), *abrogated on other grounds by* Sossamon, 563 U.S. at 277; James v. Taylor, No. 5:15-cv-266, 2016 WL 1696211, at *2 (M.D. Ga. Mar. 22, 2016) ("Binding Supreme Court and Eleventh Circuit case law prevents Plaintiff from obtaining monetary damages under RLUIPA."); see also Davila v. Marshall, 649 F. App'x 977, 980 (11th Cir. 2016) ("RLUIPA does not authorize claims for monetary damages against prison officials in their individual capacities."); Davila v. Gladden, 777 F.3d 1198, 1210 (11th Cir. 2015) ("RFRA does not therefore authorize suits for money damages against officers in their official capacities."); Gardner v. Riska, 444 F. App'x 353, 355–56 (11th Cir. 2011) ("RLUIPA creates an express private cause of action for injunctive and declaratory relief against the government . . . .").

Here, Plaintiff alleges that he needs to obtain spiritual scriptures selected by his teachers in order to practice his religion. He alleges his religion is substantially burdened because he cannot receive these spiritual teachings without providing a package request form in accordance

with GSP's package policy.  However, the Eleventh Circuit has made clear that a requirement to fill out a form or make a request is typically not, in itself, a substantial burden.  Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs., 818 F.3d 1122, 1148 (11th Cir. 2016).

Additionally, Plaintiff can only bring a RLUIPA claim for injunctive or declaratory relief, and, here, such a claim is likely moot.  San Antonio v. Henry, 618 F. App'x 554, 557 (11th Cir. 2015) (observing that the "only relief" the prisoner-plaintiff "may obtain for a RLUIPA violation is declaratory and injunctive relief").  The Court notes the GDC's website lists Plaintiff's current place of incarceration as Autry State Prison.  See Gresham v. Georgia, CV 316-084, 2016 WL 7638479 at *1 n.2 (S.D. Ga. Dec. 8, 2016) (citing records found online at the GDC's website); Perry v. Pope, No. 5:10-CV-124, 2011 WL 4454144, at *1 (M.D. Ga. Sept. 26, 2011) (taking judicial notice of Plaintiff's release from prison based on the GDC's website).

An inmate's claim for declaratory or injunctive relief regarding a condition of confinement is "subject to dismissal for mootness when that inmate is transferred to another prison and is no longer subject to the condition" for which the declaratory or injunctive relief is sought.  Govereh v. Johns, No. 5:17-cv-62, 2017 WL 4819385, at *2 n.1 (S.D. Ga. Oct. 25, 2017); see also McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984).  "The injunctive and declaratory relief analysis is the same for both Plaintiff's RLUIPA and his Section 1983 causes of action."  James, 2016 WL 1696211, at *2.  "In both cases, '[t]he general rule in [this] circuit is that a transfer . . . from prison will moot that prisoner's claims for injunctive and declaratory relief.'"  Id. (quoting Allen, 502 F.3d at 1267); see also Marshall, 649 F. App'x at 980–81; San Antonio, 618 F. App'x at 557; Hathcock v. Cohen, 287 F. App'x 793 (11th Cir. 2008).  If Plaintiff has, indeed, been transferred, the Court lacks subject-matter jurisdiction over

Plaintiff's RLUIPA claim.  San Antonio, 618 F. App'x at 557 (questioning whether the court had "subject-matter jurisdiction to resolve the RLUIPA claim" when plaintiff was no longer incarcerated at the initial prison).

For these reasons, I **RECOMMEND** the Court **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's RLUIPA claim.

### 2.    *Plaintiff's Free Exercise Claim*

Next, Defendants ask the Court to dismiss Plaintiff's free exercise claim because Plaintiff failed to state a claim for relief.  Doc. 52-1 at 11.  The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people."  Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).  "Prisoners retain their First Amendment rights, including rights under the Free Exercise Clause."  Boxer X v. Donald, 169 F. App'x 555, 559 (11th Cir. 2006).  However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).

"To establish a violation of his right to free exercise," a plaintiff "must first establish that a state actor imposed a 'substantial burden' on his practice of religion."  Wilkinson v. GEO Grp., Inc., 617 F. App'x 915, 917 (11th Cir. 2015) (citing Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1549 (11th Cir. 1993)); see Hoever v. Belleis, 703 F. App'x 908, 912 (11th Cir. 2017) (noting the "substantial burden" analysis in the free exercise clause "is derived from precedents interpreting [RLUIPA]").  The defendant can then support his conduct on the ground that he applied a "neutral law of general applicability[.]"  Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990).  "[A] prison regulation may impinge on

27

an inmate's constitutional rights when the regulation is reasonably related to legitimate penological interests." Boxer X, 169 F. App'x at 559.

Plaintiff, as discussed above, fails to support his allegations that the prison's policy of requiring a package request form constitutes a substantial burden on his religious exercise.  Thus, he cannot sustain a § 1983 claim for violations of his rights under the Free Exercise Clause. Accordingly, the Court should also **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's First Amendment free exercise claims.

### 3.   *Plaintiff's First Amendment Mail Claim*

Plaintiff also asserts that the GSP mail and package policy violates his First Amendment rights.  Incarcerated individuals retain a First Amendment right to send and receive mail. Thornburgh v. Abbott, 490 U.S. 401 (1989); see also Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008).  However, this right cannot be exercised in ways "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996).  Even "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).

Defendants argue Plaintiff's Amended Complaint fails to overcome the initial finding that the prison package request policy is justified by legitimate penological interests.  Doc. 52-1 at 11.  Under the exhausted and plausible facts alleged, Plaintiff claims Defendants are interfering with his First Amendment right to receive mail because he was unable to obtain his bible study books and materials.  However, Defendants argue Plaintiff failed to follow the prison's package request policy, and the package policy is based on a legitimate penological interest—preventing contraband from entering the prison.  Doc. 24 at 10; Doc. 52-1 at 11.

Prisons may regulate incoming mail in order to prevent contraband from entering the prison because preventing contraband from entering prisons is a legitimate penological interest. See, e.g., Al-Amin, 511 F.3d at 1331 ("[W]e fully recognize that the government has a strong interest in prison security."); Van Poyck v. Singletary, 106 F.3d 1558, 1560 (11th Cir. 1997) (noting there is a "legitimate security interest of eliminating 'the exchange of contraband among inmates.'" (quoting Little v. Norris, 787 F.2d 1241, 1243 (8th Cir. 1986))); Prison Legal News v. Chapman, 44 F. Supp. 3d 1289, 1299 (M.D. Ga. 2014) (upholding a jail's "postcard only" policy because it "reduces the likelihood that inmates will receive contraband that may be transmitted through multi-paged" mailings and letters); Althouse v. Palm Beach Cty. Sheriff's Office, No. 12-80135-CIV, 2013 WL 536072, at *1 (S.D. Fla. Feb. 12, 2013) ("Contraband smuggling in prison is an intractable problem.").

Moreover, the Supreme Court has established that hardback books in particular "are especially serviceable for smuggling contraband into an institution." Thornburgh, 490 U.S. at 413 (1989); Bell v. Wolfish, 441 U.S. 520, 550–51 (1979). Thus, a regulation requiring inmates file a package request form before receiving a package is reasonably related to a legitimate penological interest. Thus, I **RECOMMEND** the Court **GRANT** this portion of Defendants' Motion to Dismiss and **DISMISS** Plaintiff's First Amendment mail-interference claim.

## III.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendants Lane, Dozier, Allen, and Pinero. I also **RECOMMEND** the Court **DISMISS** Plaintiff's claims brought under Georgia law. I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, doc. 52, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and

Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 14th day of August, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

31